JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

LESLIE JONES-COLLINS

**(b)** County of Residence of First Listed Plaintiff   PHILADELPHIA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Sidney L. Gold, Esquire, I.D. NO.: 21374   sgold@discrimlaw.net
Sidney L. Gold & Assoc., P.C.
1835 Market St., Suite 515 Phila., PA 19103 215-569-1999

## DEFENDANTS

DEFENDER ASSOCIATION OF PHILADELPHIA

County of Residence of First Listed Defendant   PHILADELPHIA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | Leave Act | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original
Proceeding

☐ 2  Removed from
State Court

☐ 3  Remanded from
Appellate Court

☐ 4  Reinstated or
Reopened

☐ 5  Transferred from
Another District
*(specify)*

☐ 6  Multidistrict
Litigation -
Transfer

☐ 8  Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
FAMILY AND MEDICAL LEAVE ACT "FMLA" 29 U.S.C. SECTION 2601 -AND-42 U.S.C. SECTION 1981
Brief description of cause:
Employment Discrimination

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $   IN EXCESS OF
150,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
04/20/2021

SIGNATURE OF ATTORNEY OF RECORD
/s/ SIDNEY L. GOLD, ESQUIRE   ATTORNEY FOR PLAINTIFF

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 887 N. TAYLOR STREET, PHILADELPHIA, PA 19130 _____

Address of Defendant: _____ 1441 SANSOM STRET, PHILA., PA 19102 _____

Place of Accident, Incident or Transaction: _____ 1441 SANSOM STREET, PHILA., PA 19102 _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

| | | |
|---|---|---|
| 1. | Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? | Yes ☐  No ☑ |
| 2. | Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? | Yes ☐  No ☑ |
| 3. | Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? | Yes ☐  No ☑ |
| 4. | Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? | Yes ☐  No ☑ |

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 04/21/2021 _____ /s/ Sidney L. Gold, Esq. _____ 21374 _____
            *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

*A.*  *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☑ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify):* _____

*B.*  *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

### ARBITRATION CERTIFICATION
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ SIDNEY L. GOLD, ESQUIRE _____, counsel of record *or pro se plaintiff*, do hereby certify:

- ☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

- ☑ Relief other than monetary damages is sought.

DATE: 04/21/2021 _____ /s/ Sidney L. Gold, Esq. _____ 21374 _____
            *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 887 N. TAYLOR STREET, PHILADELPHIA, PA 19130

Address of Defendant: _____ 1441 SANSOM STRET, PHILA., PA 19102

Place of Accident, Incident or Transaction: _____ 1441 SANSOM STREET, PHILA., PA 19102

---

**RELATED CASE, IF ANY:**

Case Number: _____     Judge: _____     Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?      Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?      Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?      Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?      Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 04/21/2021          /s/ Sidney L. Gold, Esq.          21374
_____          _____          _____
                          *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

| A. | Federal Question Cases: | B. | Diversity Jurisdiction Cases: |
|---|---|---|---|

**A. Federal Question Cases:**

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☑ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
       *(Please specify):* _____

**B. Diversity Jurisdiction Cases:**

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
       *(Please specify):* _____

---

### ARBITRATION CERTIFICATION
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, SIDNEY L. GOLD, ESQUIRE _____, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☑ Relief other than monetary damages is sought.

DATE: 04/21/2021          /s/ Sidney L. Gold, Esq.          21374
_____          _____          _____
                          *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5 2018)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| LESLIE JONES-COLLINS | : | CIVIL ACTION |
| v. | : | |
| DEFENDER ASSOCIATION OF PHILADELPHIA | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.  ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)  ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  (☑)

| | | |
|---|---|---|
| 04/21/2021 | /s/ Sidney L. Gold, Esq. | PLAINTIFF |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 569-1999 | (215) 569-3870 | sgold@discrimlaw.net |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LESLIE JONES-COLLINS      :

        *Plaintiff,*      :

        :

        v.      :     **CIVIL ACTION NO.:**

        :

DEFENDER ASSOCIATION      :

OF PHILADELPHIA      :

        :     **JURY TRIAL DEMANDED**

        *Defendant.*      :

## COMPLAINT AND JURY DEMAND

## I.     PRELIMINARY STATEMENT:

1.     This is an action for an award of damages, attorneys' fees, and other relief on behalf of the Plaintiff, Leslie Jones-Collins ("Plaintiff Jones-Collins"), a former employee of Defender Association of Philadelphia ("Defendant"), who has been harmed by the Defendant's unlawful employment practices.

2.     This action is brought under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §2601 et seq. and 42 U.S.C. §1981 ("§1981").

## II.     JURISDICTION AND VENUE:

3.     The jurisdiction of this Court is invoked, and venue is proper in this district, pursuant to 28 U.S.C. §1331 and 1391 as Plaintiff Jones-Collins' claims are substantively based on the FMLA and §1981 and a substantial part of the events giving rise to her claims occurred in this judicial district.

4. This action has been filed within the two (2) year statutory period in accordance with the FMLA and the four (4) year statutory period in accordance with §1981.

## III. **PARTIES:**

5. Plaintiff, Leslie Jones-Collins ("Plaintiff Jones-Collins"), is an adult individual and citizen of the Commonwealth of Pennsylvania, residing therein at 887 N. Taylor Street, Philadelphia, Pennsylvania 19130.

6. Defendant, Defender Association of Philadelphia, is a non-profit duly organized and existing under the laws of the Commonwealth of Pennsylvania, maintaining a place of business at 1441 Sansom Street, Philadelphia, Pennsylvania 19102.

7. At all times relevant hereto, the Defendant was acting through its agents, servants and employees, who were acting within the scope of their authority, course of employment, and under the direct control of the Defendant.

8. At all times material herein, the Defendant is and has been a "person" and "employer" as defined under the FMLA and is accordingly subject to the provisions of said Act.

9. At all times material herein, Plaintiff Jones-Collins was an "eligible employee" as defined under the FMLA and was entitled to the protections of the provisions of said Act.

## IV.    STATEMENT OF FACTS:

10.    Plaintiff Jones-Collins was employed by the Defendant from on or about October 27, 1997 until on or about February 19, 2020, the date of her unlawful constructive termination.

11.    By way of background, Defendant provides legal representation to indigent defendants in Philadelphia.  In its federal court division, the Federal Community Defender Office for the Eastern District of Pennsylvania ("FCDO"), Defendant serves as the designated Community Defender Organization for the United States District Court for the Eastern District of Pennsylvania.  The FCDO provides trial and appellate representation to indigent defendants charged with violations of federal law, as well as federal habeas corpus representation to inmates.

12.    Throughout her tenure of employment with the Defendant, Plaintiff Jones-Collins held the position of Trial Unit Paralegal in Defendant's FCDO division.  But for the discriminatory and retaliatory events detailed below, Plaintiff Jones-Collins maintained an excellent job performance rating in said capacity.  By way of elaboration, from in or about 1997 through 2010, Plaintiff Jones-Collins received steady merit-based salary increases and outstanding performance evaluations.

13.    By way of background, in her capacity as a Trial Unit Paralegal, Plaintiff Jones-Collins was assigned to Defendant's research and writing staff.  In said role, Plaintiff Jones-Collins was responsible for tasks such as researching and writing substantive pre-trial motions, memorandums of law and sentencing memorandums; participating in monthly research and writing staff meetings; operating document

management software during motion hearings and trials; writing newsletter articles for attorneys on the Criminal Justice Act ("CJA"); and various other assignments based on attorneys' needs.

14.     From in or about 2010 through the date of her constructive termination, Defendant refused to provide Plaintiff Jones-Collins with any merit-based salary increases and/or promote Plaintiff Jones-Collins to the next Grade/Step, despite her continued outstanding performance reviews.

15.     On or about September 18, 2018, Plaintiff Jones-Collins contacted Nina Spizer ("Spizer"), Chief of the Trial Unit, regarding Defendant's failure and refusal to provide to Plaintiff Jones-Collins any merit-based salary increase and/or promotion since 2010 despite outstanding performance reviews.  Spizer assured Plaintiff Jones-Collins, "You're such an asset to the office!" but stated that Defendant was unable to increase Plaintiff Jones-Collins' salary and/or promote her.

16.     Thereafter, as a result of Spizer's failure to address Defendant's refusal to provide any merit-based salary increase and/or promotion despite outstanding performance reviews, Plaintiff Jones-Collins registered a complaint of race discrimination with Spizer regarding Defendant's failure and refusal to provide the same.

17.     In response to Plaintiff Jones-Collins stating that Defendant's failure and refusal to provide her with a merit-based salary increase and/or promotion since 2010 was based on her race, Lee Skipper ("Skipper"), Chief Federal Defender, for the first time in Plaintiff Jones Collins' over twenty (20) year career with Defendant, insinuated

that Plaintiff Jones-Collins' work performance was deficient and further falsely accused her of a "change" in professional demeanor.

18. Plaintiff Jones-Collins believes and avers that Skipper's unjustified accusation of a change in her professional demeanor was in retaliation for Plaintiff Jones-Collins stating her belief that there existed a discriminatory reason for Defendant's failure to provide her with a merit-based salary increase and/or promotion since 2010.

19. Thereafter, Defendant embarked upon a campaign of retaliation towards Plaintiff Jones-Collins. Specifically, Skipper and Spizer subjected Complainant to the silent treatment by refusing to communicate with her in person, and instead only communicated with her via email. Skipper and Spizer stopped acknowledging Jones-Collins, negatively impeding her ability to adequately perform her job functions. Indeed, when observing Plaintiff Jones-Collins in common areas of the office, Skipper and Spizer would avert their gaze to avoid looking at Plaintiff Jones-Collins and/or change their path of travel to avoid passing Plaintiff Jones-Collins. Said indignities evidence Skipper's and Spizer's retaliatory hostility towards Plaintiff Jones-Collins based on her complaints of discrimination.

20. In or about October or November of 2018, Plaintiff Jones-Collins learned that Spizer was questioning other employees regarding Plaintiff Jones-Collins' professional demeanor, asking said employees whether Plaintiff Jones-Collins seemed "disgruntled." Plaintiff Jones-Collins believes and avers that Spizer's inquisition was in furtherance of her campaign of retaliation against Plaintiff Jones-Collins.

21.     On or about November 21, 2018, Spizer, unjustifiably accused Plaintiff Jones-Collins of unprofessionalism in connection with an email sent by Plaintiff Jones-Collins regarding office hours.  Importantly, Spizer copied the entire Trial Unit in her response to Plaintiff Jones-Collins' email in a deliberate attempt to demean and embarrass Plaintiff Jones-Collins in front of her colleagues.

22.     Plaintiff Jones-Collins immediately reported Spizer's hostile accusation and escalating harassing behavior to Skipper.  Skipper dismissed Plaintiff Jones-Collins complaint, and instead responded, "You seem upset.  Go take a walk.  Go take a walk." Importantly, following Plaintiff Jones-Collins' complaint, Skipper failed and refused to investigate the same or take any remedial action to cause Spizer's retaliatory treatment to cease.

23.     On or about November 26, 2018, due to Defendant not having a human resources department and/or director at that time, Plaintiff Jones-Collins registered a formal complaint of race discrimination to Helen Marino ("Marino"), First Assistant Federal Defender.  In said grievance, Plaintiff Jones-Collins stated her belief that Spizer's aforesaid conduct was racially motivated and further stated her belief that said conduct was in retaliation for registering a complaint regarding Defendant's failure and refusal to provide her with a merit-based salary increase and/or promotion based on her race.

24.     Further, in said grievance, Plaintiff Jones-Collins described the aforesaid silent treatment to which Spizer subjected her, and reiterated that Spizer's campaign of retaliation negatively impeded her ability to adequately perform her job functions.

25.     Contemporaneously, on said date, Spizer issued Plaintiff Jones-Collins a written memorandum falsely accusing Plaintiff Jones-Collins of unprofessionalism. Specifically, Spizer acknowledged, "It has been documented in all of your reviews the high quality of work you provide to the office and to the clients. Your writing is outstanding and your dedication to the office and the clients has been beyond reproach. Yet the last six months we have seen a decline in your usual team approach to your work and we have seen an unprofessionalism we have never seen from you before."

26.     Significantly, Spizer's false accusation directly contradicts an email Spizer sent to Plaintiff Jones-Collins just two (2) months prior wherein Spizer declared that Plaintiff Jones-Collins was "such an asset to the office!"

27.     Importantly, said written memorandum was the first time in Plaintiff Jones-Collins' over twenty-year career with Defendant that she had ever been accused of "unprofessionalism." Plaintiff Jones-Collins believes and avers that Spizer, in collaboration with Skipper, levied said unfounded accusation in retribution for Plaintiff Jones-Collins stating her belief that Defendant's failure and refusal to provide with her a merit-based salary increase and/or promotion was based on her race.

28.     Moreover, in Spizer's written memorandum, Spizer accused Plaintiff Jones-Collins of being "confrontation[al]," "inappropriate," "aggressive," and "somewhat hostile." Further, Spizer directed Plaintiff Jones-Collins that she must have "[a] better attitude in accepting assignments." Spizer further falsely accused Plaintiff Jones-Collins of unprofessionalism in her handling of a capital trial case in Defendant's office, the *Rodriguez-Mendoza* case.

29. Plaintiff Jones-Collins believes and avers that Spizer's unjustified criticism and directive constitutes microaggression towards Plaintiff Jones-Collins based on her race and further perpetuates the racially-discriminatory 'angry Black woman' stereotype. Indeed, only after Plaintiff Jones-Collins expressed her belief that Defendant marginalized her based on her race did Spizer start insinuating that Plaintiff Jones-Collins was not a 'team player.'

30. Accordingly, on or about November 28, 2018, Plaintiff Jones-Collins submitted a written response to Spizer's aforesaid memorandum to Marino. Plaintiff Jones-Collins stated her belief that Spizer's November 21st email was retaliatory and evidenced Spizer's racial bias. Moreover, Plaintiff Jones-Collins pointed out the conveniently-timed accusations of unprofessionalism directly coincided with Plaintiff Jones-Collins aforesaid complaint of race discrimination based on Defendant's failure and refusal to provide her with a merit-based salary increase and/or promotion.

31. On or about December 1, 2018, Plaintiff Jones-Collins submitted a supplemental response to Spizer's November 26th written memorandum, directly refuting Spizer's unfounded accusation that Plaintiff Jones-Collins acted "inappropriate" and "aggressive" during the *Rodriguez-Mendoza* case. Plaintiff Jones-Collins provided all of her email correspondence with Peter Williams ("Williams"), Assistant Federal Defender, Capital Habeas Unit, which directly refuted Spizer's untoward accusation of Plaintiff Jones-Collins' "inappropriate" and "aggressive" behavior.

32.     On or about December 3, 2018, Plaintiff Jones-Collins met with Marino and Kristen Muhl ("Muhl"), Financial Officer interim Human Resources, to discuss Plaintiff Jones-Collins' aforesaid grievance.  Rather than conducting an impartial investigation of Plaintiff Jones-Collins' complaint, Marino interrogated Plaintiff Jones-Collins for two and a half hours about Spizer's written memorandum.  Further, Marino concluded the said meeting by advising Plaintiff Jones-Collins that she "agreed" with Spizer's racially-motivated accusations, evidencing Marino's discriminatory hostility towards Plaintiff Jones-Collins based on her race.

33.     Accordingly, on or about December 6, 2018, Plaintiff Jones-Collins submitted another formal complaint regarding the December 3rd meeting with Marino and set forth Defendant's history of racial bias in Defendant's office throughout the years. Plaintiff Jones-Collins provided examples of Spizer's bias towards black employees. Plaintiff Jones-Collins also provided examples of Marino's bias towards black employees.  Upon information and belief, Defendant failed and refused to conduct a proper investigation of Plaintiff Jones-Collins' complaint and further failed and refused to take any remedial action.

34.     On or about February 10, 2019, Plaintiff Jones-Collins sent an email to Marino delineating the continued retaliation to which Spizer subjected her.  Specifically, Plaintiff Jones-Collins stated her belief that Spizer deliberately assigned substantially more work to Plaintiff Jones-Collins in retaliation for opposing unlawful race discrimination in the workplace.  Plaintiff Jones-Collins pointed out the clear disparity between her workload and that of the other paralegals in the office.  Further, Plaintiff

Jones-Collins disclosed to Marino that Spizer's retaliatory treatment was causing her extreme emotional distress.

35.     On or about February 25, 2019, Marino issued a memorandum with her purported findings from her alleged investigation of Plaintiff Jones-Collins' November 26th complaint.  Marino acknowledged that Plaintiff Jones-Collins was a "valued employee of this office and [Plaintiff Jones-Collins has] provided quality work." Moreover, Marino acknowledged Defendant's failure to follow its own policy and procedure: "management would like to offer you an apology for errors management made by failing to follow policy and procedure."

36.     However, Marino failed to address Plaintiff Jones-Collins' December 6th complaint wherein Plaintiff Jones-Collins described Defendant's history of racial bias. Instead, Marino stated her belief that "there have been missteps on both sides . . . ." Marino recommended that Plaintiff Jones-Collins participate in a mediated dialogue with Spizer and Skipper.

37.     On or about March 1, 2019, Plaintiff Jones-Collins submitted a written memorandum in response to Marino's purported findings from her alleged investigation. Specifically, Plaintiff Jones-Collins questioned the thoroughness of Defendant's alleged 'investigation' given the brevity of Marino's purported findings.  Plaintiff Jones-Collins also expressed her apprehension of a mediated dialogue with Spizer and Skipper given their history of hostility toward her based on her race and/or registering complaints of race discrimination in the workplace.

38.     Accordingly, on or about March 4, 2019, Marino advised Plaintiff Jones-Collins that she would prepare a formal report and promised that she would "do [her] best to get a report done within a week."

39.     Nearly two (2) months later, on or about April 22, 2019, Marino issued her Report wherein Defendant acknowledged, "an apology is due regarding [Spizer's] email of November 21, 2018, which went to all Traditional Unit staff without prior supervisory inquiry or discussion with her and without due consideration of its impact on [Plaintiff Jones-Collins]. There should be no such emails in the future."

40.     Notwithstanding the foregoing, just three (3) days later, on or about April 25, 2019, Spizer interrogated Plaintiff Jones-Collins in an email regarding duty coverage. Importantly, prior to Plaintiff Jones-Collins' complaint against Spizer, Plaintiff Jones-Collins had never been questioned regarding duty coverage and at all times followed Defendant's protocol. In fact, as the most senior member of the research and writing staff, Plaintiff Jones-Collins was often tasked with training newly hired Research and Writing Attorneys and Paralegals on Defendant's protocol for covering duty.

41.     Plaintiff Jones-Collins believes and avers that Spizer's aforesaid email evidences Spizer's intent to continue her campaign of retaliation against Plaintiff Jones-Collins notwithstanding Marino's directive that "there should be no such emails in the future."

42.     Marino's Report also exposed her own racial bias towards Plaintiff Jones-Collins.  By way of elaboration, in said Report, Marino used terms like "entitlement" and "entitle" when addressing Plaintiff Jones-Collins' complaint about not receiving a merit-based salary increase and/or promotion based on her race, despite consistent outstanding performance.  Marino inferred that Plaintiff Jones-Collins' examples of Defendant's history of race bias in promoting and creating special paralegal positions/titles for white women with less seniority than their black women counterparts were unworthy of credence, characterizing them as "office rumor," "gossip," or "the reports of those who did not receive promotion," (i.e. black women).  Yet, Marino acknowledged that Defendant had created paralegal positions with special titles (i.e. Paralegal Document Manager in the Trial Unit and Supervisory Paralegal in the Capital Habeas Unit), and that such positions were "awarded" to less experienced Caucasian women "based on merit" and "greater experience with criminal legal practice."  Importantly, Marino noted that Skipper disfavored such recognition for Plaintiff Jones-Collins.

43.     On or about May 6, 2019, Plaintiff Jones-Collins sent an email to Marino and expressed her willingness to participate in a mediated dialogue with Spizer and Skipper "in the interest of moving forward and restoring a cordial working relationship . . . ."

44.     Notwithstanding the foregoing, on or about May 29, 2019, Elizabeth Toplin ("Toplin"), Assistant Chief of Trial Unit, informed Plaintiff Jones-Collins that Spizer was assigning her to perform case management responsibilities for Colleen Bryan ("Bryan"), Paralegal Document Manager/Legal Assistant to Spizer, while Bryan was on vacation the

week of June 3, 2019. In her twenty-plus years with Defendant, Plaintiff Jones-Collins had never been asked, nor required, to assume another employee's job duties while they were on vacation.

45.     Importantly, prior to Bryan's hire, Ed O'Neil ("O'Neil"), Clerk, served as the interim case management assistant and remained in said capacity for approximately a year following Bryan's hire. Upon information and belief, at the time of Spizer's reassignment of Bryan's case management duties to Plaintiff Jones-Collins, O'Neil continued to routinely assist Bryan with case management tasks. Upon information and belief, O'Neil was available and willing to substitute for Bryan the week of June 3rd.

46.     Notwithstanding this, Spizer assigned Bryan's case management responsibilities to Plaintiff Jones-Collins instead of O'Neil. Plaintiff Jones-Collins believes and avers that Spizer deliberately did so in further discrimination and/or retaliation in an effort to undermine Plaintiff's Jones-Collins ability to timely and adequately perform her own job functions and create animosity and distrust between Plaintiff Jones-Collins and the trial attorneys. Furthermore, Plaintiff Jones-Collins believes and avers that Spizer deliberately sought to undermine Plaintiff Jones-Collins' work performance to manufacture a pretext to terminate her employment and/or otherwise subject her to unjustified discipline in furtherance of Defendant's campaign of retaliation.

47.	On or about July 16, 2019, after conversations with different members of the research and writing staff, Plaintiff Jones-Collins deduced that Spizer may have been excluding her from emails and meetings involving research and writing staff matters. Accordingly, Plaintiff Jones-Collins registered a complaint with Jennifer Nimmons Herman ("Nimmons Herman"), Assignment Coordinator for Research and Writing Staff. Nimmons Herman confirmed that Spizer had been purposefully excluding Plaintiff Jones-Collins from monthly meetings and other matters involving the research and writing staff. In response, Plaintiff Jones-Collins stated that Spizer's deliberate exclusion constituted further retaliation. Nimmons Herman agreed.

48.	On said date, Spizer sent Plaintiff Jones-Collins an email wherein Spizer stated: "In talking to [Jennifer], I think it may be prudent for you guys to attend the [research and writing] meetings. Keeps everyone in the loop and up on the law." Importantly, prior thereto, throughout Plaintiff Jones-Collins' employment with Defendant, Plaintiff Jones-Collins had always attended the research and writing meetings. In fact, Plaintiff Jones-Collins was the most senior member of the research and writing staff.

49.	Plaintiff Jones-Collins believes and avers that Spizer deliberately excluded Plaintiff Jones-Collins from said meetings in further discrimination and/or retaliation to undermine Plaintiff Jones-Collins' ability to adequately perform her job functions and alienate her from her colleagues.

50.     On or about August 26, 2019, Plaintiff Jones-Collins participated in a confidential mediation with Spizer, Skipper, and Marino, individually. Notably, this was the first time Skipper had communicated in-person with Plaintiff Jones-Collins since November of 2018.

51.     During this time, Plaintiff Jones-Collins continued to experience severe emotional distress due to the discriminatory and retaliatory treatment to which she had been intentionally and methodically subjected.

52.     In connection thereto, Plaintiff Jones-Collins' experienced an exacerbation of her Anxiety Disorder and her mental health professional recommended that she commence a medical leave of absence to treat her serious medical condition.

53.     Accordingly, on or about August 29, 2019, Plaintiff Jones-Collins sent an email to Vonna Campbell ("Campbell"), Human Resources Director, requesting a medical leave of absence pursuant to the Family and Medical Leave Act ("FMLA").

54.     On or about September 13, 2019, Plaintiff Jones-Collins submitted the necessary paperwork to Defendant's human resources department.

55.     Thereafter, on or about September 16, 2019, Plaintiff Jones-Collins commenced a medical leave of absence pursuant to the FMLA.

56.     On or about December 23, 2019, Plaintiff Jones-Collins returned to work following her medical leave of absence pursuant to the FMLA.

57.     Following Plaintiff Jones-Collins' return to work, Defendant, through its agents, servants, and employees, embarked upon a campaign of retaliation against Plaintiff Jones-Collins for exercising her rights pursuant to the FMLA. Skipper and

Spizer resumed their silent treatment of Plaintiff Jones-Collins. Most telling, Skipper never spoke to Plaintiff Jones-Collins again.

58. By way of background, during Plaintiff Jones-Collins' FMLA leave, she learned that Defendant intended to change assignments for the research and writing staff. Whereas the research and writing staff were previously assigned to work with all trial attorneys based on availability, said staff members would now be assigned to permanent trial attorney teams.

59. To that end, upon returning to work following her FMLA leave, Plaintiff Jones-Collins was assigned to two (2) trial attorneys with large caseloads. Moreover, the majority of Plaintiff Jones-Collins' pre-FMLA leave case assignments, along with their assigned trial attorneys, were returned to her.

60. In addition to her case-related work, Plaintiff Jones-Collins continued to oversee the Early Termination of Supervised Release ("ETM") Program, an extremely challenging and time-consuming project. Indeed, prior to Plaintiff Jones-Collins' FMLA leave, Defendant acknowledged that management of the ETM Program would, without a doubt, impact Plaintiff Jones-Collins' ability to manage and complete her case-related assignments. Accordingly, Defendant acknowledged that management of the ETM Program should be "spread" among Plaintiff Jones-Collins and other staff, including Toplin and Nimmons Herman.

61.     However, after Plaintiff Jones-Collins' return from FMLA leave,

Defendant, in retaliation for Plaintiff Jones-Collins exercising her rights pursuant to the

FMLA, notified Plaintiff Jones-Collins that she would now be responsible for taking on

the "entirety of the early termination project," as a disciplinary measure in further

retaliation.

62.     Jake O'Donnell ("O'Donnell"), a Caucasian individual similarly-situated to

Plaintiff Jones-Collins, was a newly barred attorney, who had been employed as a

Paralegal in the Trial Unit for less than a year. O'Donnell, like Plaintiff Jones-Collins,

was also assigned to two (2) trial attorneys with large caseloads. In addition, O'Donnell

was assigned to Spizer.  Upon information and belief, Spizer's trial caseload was slight

due to her extensive administrative responsibilities as Chief of the Trial Unit. Paralegal

Document Manager Bryan assisted Spizer with her administrative duties.

63.     On or about February 6, 2020, Spizer notified Plaintiff Jones-Collins in an

email that Plaintiff Jones-Collins was being assigned one of the trial attorneys that had

been previously assigned to O'Donnell.  Accordingly, Plaintiff Jones-Collins was now

responsible for three (3) trial attorneys, whereas O'Donnell was only responsible for one

(1).

64.     The aforesaid reassignment of O'Donnell's attorney to Plaintiff Jones-

Collins, in addition to her responsibility of the ETM Program, as well as her pre-FMLA

case assignments, created a substantial disparity in the amount of work and responsibility

between Plaintiff Jones-Collins and O'Donnell.  Moreover, Plaintiff Jones-Collins'

increased workload caused a substantial hardship for Plaintiff Jones-Collins, impairing her ability to timely and satisfactorily complete her assignments.

65. Plaintiff Jones-Collins believes and avers that Spizer intentionally and calculatedly created the said disparity and overloaded Plaintiff Jones-Collins with assignments in an effort to undermine Plaintiff Jones-Collins' ability to adequately perform her job responsibilities in retaliation for registering complaints of race discrimination in the workplace and/or for exercising her rights under the FMLA.

66. Plaintiff Jones-Collins further believes and avers that Spizer unjustifiably increased Plaintiff Jones-Collins workload in a deliberate effort to cause Plaintiff Jones-Collins to resign from her position of employment and/or to manufacture a pretext to terminate Plaintiff Jones-Collins' employment.

67. Upon receiving said email from Spizer, Plaintiff Jones-Collins promptly contacted Toplin to register a complaint of race discrimination and/or retaliation with respect to the disparity in workload between Plaintiff Jones-Collins and O'Donnell.

68. In further retaliation, on or about February 10, 2020, Spizer demanded that Plaintiff Jones-Collins meet with her to discuss the aforesaid complaint to Toplin and further discuss Plaintiff Jones-Collins' caseload. Plaintiff Jones-Collins requested that Campbell be in attendance at said meeting given Spizer's history of hostility towards Plaintiff Jones-Collins.

69.     Accordingly, on said date, Plaintiff Jones-Collins attended a meeting with Spizer, Toplin, Campbell, and Nimmons Herman.  During said meeting, Spizer demeaned and berated Plaintiff Jones-Collins regarding her work performance since returning from her FMLA leave.

70.     Specifically, Spizer admonished that Plaintiff Jones-Collins' FMLA leave left the research and writing staff in a "lurch," requiring them to "step up" to assist with Plaintiff Jones-Collins' caseload.  Moreover, Spizer falsely accused Plaintiff Jones-Collins of work performance deficiencies since her return from FMLA.

71.     Plaintiff Jones-Collins emphatically denied that there had been any changes to her work performance following her return from FMLA leave, as nothing had changed with respect to the status of her assigned cases upon her return to the office.

72.     At the conclusion of the meeting, Spizer sternly directed Plaintiff Jones-Collins to "stop bitching and complaining."

73.     Plaintiff Jones-Collins believes and avers that Spizer's aforesaid directive was a veiled threat that Defendant would terminate Plaintiff Jones-Collins' employment if she registered any further complaints of discrimination and/or retaliation.

74.     Additionally, during said meeting, Spizer demanded that Plaintiff Jones-Collins document each and every work task she completed for the next thirty (30) days. Importantly, Plaintiff Jones-Collins had never previously been counseled for any alleged lack of productivity and/or been required to document her work tasks in her over twenty-year tenure of employment with Defendant.

75.     The next day, on or about February 11, 2020, Skipper issued Plaintiff Jones-Collins a memorandum titled "Repeated Insubordination and Unprofessional Conduct" in connection with the February 10th meeting.

76.     In said memorandum, Skipper falsely accused Plaintiff Jones-Collins of lack of productivity, insubordination, and hostility, among other unfounded accusations. Skipper warned Plaintiff Jones-Collins that her alleged "behavior" would not be tolerated and further stated that Plaintiff Jones-Collins' "accusations" of race discrimination and/or retaliation "will not be tolerated."

77.     Most significantly, Skipper stated: "We will not tolerate your continuing attempts to create a paper trail of false allegations. We readily acknowledge these behaviors have not been the typical behavior over the last twenty years. However, the change in your behavior came not from anything management has done; but it began when you were not given a promotion. And that behavior has continued."

78.     Moreover, Skipper threatened to terminate Plaintiff Jones-Collins if her alleged "behavior" did not immediately change. Said threat of termination caused Plaintiff Jones-Collins severe emotional distress and resulted in a physical exacerbation of symptoms related to her Anxiety Disorder.

79.     As a result of the intolerable working conditions to which Plaintiff Jones-Collins was subjected in retaliation for registering complaints of race discrimination and/or in retribution for exercising her rights under the FMLA, on or about February 19, 2020, Plaintiff Jones-Collins' employment was constructively terminated.

80. Plaintiff Jones-Collins specifically delineated that her involuntary resignation was directly attributable to Defendant's "ongoing antagonism and retaliatory animus." Plaintiff Jones-Collins further stated that her last day of employment would be February 28, 2020.

81. However, on said date, rather than permitting Plaintiff Jones-Collins to serve out her notice period, Defendant immediately seized Plaintiff Jones-Collins' work laptop. Indeed, Defendant demanded that Plaintiff Jones-Collins immediately vacate the premises and escorted her out of the building in full view of her colleagues, actions taken only when an employee is terminated.

## COUNT I
### (§1981 – Hostile Work Environment, Racial Harassment)
### Plaintiff Jones-Collins v. the Defendant

82. Plaintiff Jones-Collins incorporates by reference paragraphs 1 through 81 of this Complaint as though fully set forth at length herein.

83. The actions of Defendant, through its agents, servants and employees, in subjecting Plaintiff Jones-Collins to a hostile work environment based on her race (African American) and/or racial harassment, constituted a violation of §1981.

84. As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by Defendant in violation of §1981, as aforesaid, Plaintiff Jones-Collins sustained permanent and irreparable harm, which caused her to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay, and interest due thereon.

85.     As a further direct result of the aforesaid discriminatory employment practices engaged in by Defendant in violation of §1981, Plaintiff Jones-Collins suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

### COUNT II
### (§1981 – Retaliatory Hostile Work Environment)
### Plaintiff Jones-Collins v. the Defendant

86.     Plaintiff Jones-Collins incorporates by reference paragraphs 1 through 85 of this Complaint as though fully set forth at length herein.

87.     The actions of Defendant, through its agents, servants and employees, in subjecting Plaintiff Jones-Collins to a hostile work environment in retaliation for registering complaints of race discrimination and/or opposing unlawful race discrimination in the workplace, constituted a violation of §1981.

88.     As a direct result of the aforesaid unlawful retaliatory employment practices engaged in by Defendant in violation of §1981, as aforesaid, Plaintiff Jones-Collins sustained permanent and irreparable harm, which caused her to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay, and interest due thereon.

89.     As a further direct result of the aforesaid retaliatory employment practices engaged in by Defendant in violation of §1981, Plaintiff Jones-Collins suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## COUNT III
### (§1981 – Retaliation)
### Plaintiff Jones-Collins v. the Defendant

90.    Plaintiff Jones-Collins incorporates by reference paragraphs 1 through 89 of this Complaint as though fully set forth at length herein.

91.    The actions of Defendant, through its agents, servants, and employees, in subjecting Plaintiff Jones-Collins to retaliation for registering complaints of race discrimination and/or opposing unlawful race discrimination in the workplace, constituted a violation of §1981.

92.    As a direct result of the aforesaid unlawful retaliatory employment practices engaged in by Defendant in violation of §1981, Plaintiff Jones-Collins sustained permanent and irreparable harm, which caused her to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay, and interest due thereon.

93.    As a further direct result of the aforesaid retaliatory employment practices engaged in by Defendant in violation of §1981, Plaintiff Jones-Collins suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## COUNT IV
### (§1981 – Failure to Promote)
### Plaintiff Jones-Collins v. the Defendant

94.    Plaintiff Jones-Collins incorporates by reference paragraphs 1 through 93 of this Complaint as though fully set forth at length herein.

95. The actions of the Defendant, through its agents, servants and employees, in failing to promote Plaintiff Jones-Collins and/or provide any salary increases based on her race, constituted a violation of §1981.

96. As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by Defendant in violation of §1981, Plaintiff Jones-Collins sustained permanent and irreparable harm, which caused her to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, and front pay, and interest due thereon.

97. As a further direct result of the aforesaid discriminatory employment practices engaged in by Defendant in violation of §1981, Plaintiff Jones-Collins suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

### COUNT V
### (FMLA)
### Plaintiff Jones-Collins v. the Defendant

98. Plaintiff Jones-Collins incorporates by reference paragraphs 1 through 97 of this Complaint as though fully set forth at length herein.

99. The actions of Defendant, through its agents, servants, and employees, in subjecting Plaintiff Jones-Collins to retaliation for exercising her rights under the FMLA, ultimately resulting in the constructive termination of her employment, constituted a violation of the FMLA.

100. The aforesaid actions of Defendant were willful, malicious, wanton, in bad faith, and in reckless disregard of Plaintiff Jones-Collins' rights.

101. As a direct result of the willful, wanton, reckless, careless and negligent acts of Defendant, as aforesaid, Plaintiff Jones-Collins has suffered a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, front pay, and interest due thereon.

## PRAYER FOR RELIEF

102. Plaintiff Jones-Collins incorporates by reference paragraphs 1 through 101 of this Complaint as though fully set forth at length herein.

**WHEREFORE,** Plaintiff Jones-Collins requests that this Court enter judgment in her favor and against the Defendant and Order that:

a. Defendant compensate Plaintiff Jones-Collins for the wages and other benefits and emoluments of employment lost, because of its unlawful conduct;

b. Defendant compensate Plaintiff Jones-Collins with an award of front pay, if appropriate;

c. Defendant pay to Plaintiff Jones-Collins punitive damages, liquidated damages, compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses as allowable;

d. Defendant pay to Plaintiff Jones-Collins pre and post judgment interest, costs of suit and attorney and expert witness fees as allowed by law;

e. The Court award such other relief as is deemed just and proper.

## JURY DEMAND

Plaintiff Jones-Collins demands a trial by jury.

<div style="margin-left: 40%;">

SIDNEY L. GOLD & ASSOC., P.C.

By:   /s/ Sidney L. Gold, Esquire
SIDNEY L. GOLD, ESQUIRE
I.D. No.: 21374
1835 Market Street, Suite 515
Philadelphia, PA 19103
(215) 569-1999
**Attorney for Plaintiff**

</div>

DATE:  April 21, 2021

## <u>VERIFICATION</u>

I hereby verify that the statements contained in the attached Complaint are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of Title 18 Pa. C.S.A. §4904, relating to unsworn falsification to authorities.


Apr 19, 2021

DATE:_____

Leslie Jones-Collins (Apr 19, 2021 17:23 EDT)

LESLIE JONES-COLLINS, PLAINTIFF